UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BERNARD HARDRICK, #606507,

        Plaintiff,

v.

UNKNOWN FORREST, et al.,

        Defendants.
_____/

Case No. 2:21-cv-238

Hon. Robert J. Jonker
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.    Introduction

This Report and Recommendation (R&R) addresses the frivolous nature of Plaintiffs' complaint as well as Plaintiffs' failure to state a claim on which relief may be granted.

Plaintiff — state prisoner Bernard Hardrick — filed suit pursuant to 42 U.S.C. § 1983 on November 24, 2021. In his verified complaint, Hardrick alleged that while he was confined at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan, URF employees violated his Eighth Amendment rights by acting with deliberate indifference to a serious risk of harm. He further alleged that after he was transferred to the Marquette Branch Prison (MBP) in Marquette, Michigan, MBP employees violated his Eighth Amendment rights by acting with deliberate indifference to his serious medical needs. (ECF No. 1, PageID.2.) Specifically, Hardrick claimed that on September 13, 2020, Defendants Corrections Officer (CO)

Forrest, CO Lounds, Sergeant (Sgt.) Jefferies, and two unknown COs locked down his housing unit at URF from the officer's station after a fight broke out in the unit's dayroom. (*Id.*, PageID.3.) Hardrick said that he was trapped in the hallway, and that when he asked the officers to let him into his cell where he would be safe, the officers denied his request, and fled the unit. (*Id.*, PageID.3-4.) Hardrick alleged that after the officers fled the unit, he was sexually assaulted by three masked inmates. (*Id.*, PageID.4-6.) The next day, Hardrick was transferred to MBP, where he repeatedly informed Defendant Warden Huss that he had been sexually assaulted. (*Id.*, PageID.6-7.) When Huss ignored Hardrick's complaints, Hardrick informed Defendant Registered Nurse (RN) Kubont about the sexual assault. (*Id.*, PageID.7-8.) Kubant said that Hardrick was supposed to be scheduled for a medical examination, but that the examination was not considered emergent, so she did not know when Hardrick would be seen. (*Id.*, PageID.8.)

     This Court is under a continuing obligation to dismiss this case if it determines that the action is frivolous or malicious or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e). Defendants have filed motions for summary judgment based on Hardrick's failure to exhaust his administrative remedies. (ECF Nos. 21, 27.) In doing so, they have provided this Court with documents bearing on the frivolous nature of Hardrick's complaint and on Hardrick's failure to state a claim. Namely, Defendants included a copy of a Class I Misconduct Report related to the September 13, 2020 incident, and an affidavit that Hardrick submitted in another

case, *Raines v. Martin., et al.*, W.D. Mich. Case No. 2:21-cv-108, that contradict the factual allegations in his complaint.

The Class I Misconduct Report reflects that Hardrick was charged with inciting a riot and rioting or destroying property. (ECF No. 22-4, PageID.144.) Hardrick defended the charge by asserting that he was in the bathroom during the riot, as alleged in his complaint. After viewing video of the disturbance, The Hearing Officer determined that Hardrick was not in the bathroom as alleged, but rather in the lobby participating in the riot. (*Id.*) And in Hardrick's affidavit in *Raines v. Martin., et al.*, W.D. Mich. Case No. 2:21-cv-108, Hardrick alleges that he observed a different prisoner being sexually assaulted in a different bathroom during the September 13, 2020 riot. (ECF No. 29-9, PageID.191.) Hardrick indicated that he executed the affidavit because he would want someone to act as a witness for him if he was sexually assaulted. (*Id.*, PageID.192.)

Based on these documents, the undersigned finds it pertinent to evaluate whether the Court must dismiss this action in accordance with 28 U.S.C. § 1915(e) before considering Defendants motions for summary judgment.[1]

The undersigned respectfully recommends that the Court dismiss this action as frivolous and for failure to state a claim. The Class I Misconduct Hearing Officer's determination that Hardrick was in the lobby participating in the September 13, 2020 riot and not in the bathroom is entitled to preclusive effect. And Hardrick's affidavit

---

[1] The undersigned will hold these motions in abeyance pending the resolution of this R&R.

3

in *Raines v. Martin., et al.*, further establishes the fanciful nature of Hardrick's allegations.

## II.    Factual Allegations

In his verified complaint, Hardrick says that he was incarcerated in the Neebish Unit at URF on September 13, 2020 when three inmates began to fight. (*Id.*, PageID.3.) Hardrick says that after the fight, Defendants CO Forrest, CO Lounds, Sgt. Jefferies, and two unknown Corrections Officers locked the unit down from the officer's station. In doing so, the officers caused many of the inmates in the day rooms, including Hardrick, to be locked out of their cells. (*Id.*) Hardrick says that the inmates who were locked out of their cells became frustrated, and that Hardrick approached the officer's station and asked to be let into his cell. CO Forrest and Sgt. Jefferies allegedly told Hardrick that they were not opening any cells until inmates in the Neebish Unit calmed down. (*Id.*) At this point, Hardrick says that several other inmates rushed the officer's station demanding to be let into their cells. According to Hardrick, this caused the officers to flee, with CO Forrest yelling "good luck Hardrick" on his way out of the unit. (*Id.*, PageID.3-4.)

Hardrick says that after the officers fled, Neebish Unit inmates began to riot. (*Id.*, PageID.4.) Hardrick "sought shelter" from the riot in the B-Wing bathroom. About an hour later, Hardrick says that a masked inmate entered the bathroom and approached the stall Hardrick was sitting in. (*Id.*) When Hardrick tried to leave, the inmate allegedly pulled out a shank, and told Hardrick to sit back down. Hardrick

says that at this point, two other masked inmates approached, flanking Hardrick. Those inmates brandished knives. (*Id.*)

According to Hardrick, the inmates flanking him pressed their knives to his shoulder and his neck. (*Id.*, PageID.5.) The inmate standing in front of Hardrick then placed his shank under Hardrick's chin and told Hardrick to perform fellatio. Hardrick says that he attempted to flee, but the masked inmates grabbed him, and began punching him repeatedly. (*Id.*) After his failed attempt, Hardrick says that one of the inmates orally penetrated him. (*Id.*)

Hardrick says that after the assault, and after URF employees contained the disturbance in Neebish Unit, he was too embarrassed to tell URF staff what had happened. (*Id.*, PageID.6.) The next morning, Hardrick was transferred to MBP. Hardrick says that upon his arrival, he informed Defendant Warden Huss about the sexual assault. Warden Huss allegedly responded: "Come on, seriously. You're too big to be victimized in such a manner; I could see maybe if it happened the other way around and you were the victimizer." (*Id.*) Hardrick says that he spoke to Huss about the assault again on October 1, 2020, asking if she had reported the sexual assault to the Prison Rape Elimination Act (PREA) investigator at MBP. (*Id.*, PageID.7.) Huss allegedly told Hardrick that she had more urgent concerns, and that he should file a grievance. (*Id.*) The same day, Hardrick filed a PREA grievance, and a regular grievance against the URF officers and Huss for deliberate indifference.

On October 23, 2020, Hardrick says that he inquired as to the status of his PREA grievance as he had not received a number for his grievance and had not been

5

seen by medical staff. (*Id.*)  Huss informed Hardrick that the grievance had been received and processed, but that Hardrick's complaint "did not rise to the level of urgency to be considered an emergency that warrants priority over other Covid emergencies."

On November 1, 2020, Hardrick informed MBP RN Kubont about the sexual assault. (*Id.*)  Kubont allegedly told Hardick that she was aware of his assault, and that he was supposed to be scheduled for a medical examination. (*Id.*, PageID.8.)  But Kubont also stated that Hardrick was not the only prisoner claiming to have been sexually assaulted during the riot, and that Hardrick's situation was not considered urgent.  On December 15, 2020, after months of waiting for his Step I response, Hardrick filed a Step II PREA grievance, this time including allegations against Kubont. (*Id.*)

### III.  Analysis

This Court granted Hardrick leave to proceed *in forma pauperis* on February 23, 2022.  (ECF No. 7.)  When a plaintiff proceeds *in forma pauperis*, 28 U.S.C. § 1915(e) provides that the Court "shall dismiss the case at any time if the court determines that the action or appeal is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief."  A complaint is frivolous when "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A complaint fails to state a claim when it sets forth factual allegations insufficient to "raise a right to relief above the speculative level on the assumption that all of the complaint's

6

allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

A complaint barred by res judicata is legally frivolous and fails to state a claim. *See Taylor v. Reynolds*, 22 F. App'x 537, 538-39 (6th Cir. 2001) (affirming the dismissal of a complaint as legally frivolous where the complaint was barred by res judicata); *see also Hill v. Lappin*, 630 F.3d 468 (6th Cir. 2010) ("Any complaint that is legally frivolous would ipso facto fail to state a claim upon which relief can be granted"). This Court has similarly found that a complaint fails to state a claim when the findings of a Class I Misconduct Hearing Officer undermine the allegations in the plaintiff's complaint. *See Robinson v. Stephan*, No. 1:18-1166, 2018 WL 6444282, at *4-6 (W.D. Mich. Dec. 10, 2018) (finding that plaintiff failed to state a First Amendment retaliation claim because the Class I Misconduct Hearing Officer's determination that the plaintiff was guilty of the charge was entitled to preclusive effect); *Farr v. Unknown Parties*, No. 1:18-cv-575, 2018 WL 3031013, at *4-5 (W.D. Mich. June 19, 2018) (finding that the plaintiff failed to state an Eighth Amendment claim because the Class I Misconduct Hearing Officer's determination that the defendants were justified in applying force was entitled to preclusive effect).

The essence of Hardrick's claims is that URF employees failed to protect him from being sexually assaulted and MBP employees failed to provide him with adequate medical treatment following the sexual assault. He says that he was sexually assaulted by three men in a URF bathroom during the September 13, 2020 riot in URF's Neebish Unit. What Hardrick does not include in his complaint is that

he was charged with inciting and participating in the September 13, 2020 riot. The Class I Misconduct Hearing Report for those charges is shown below.

**CLASS I MISCONDUCT HEARING REPORT** (Rev. 10/10)

| Prisoner | Prisoner Name | Facility Code | Lock | Violation Date |
|---|---|---|---|---|
| 606507 | Hardrick | MBP | C-3 | 09/13/2020 |

**Charge(s):** Incite to Riot or Strike; Rioting or Striking/ Destruction or Misuse of Property

If Charge Changed by Hearing Officer:

**Plea:** ☐ Guilty  ☒ Not Guilty

Misconduct Report Read to and Discussed with Prisoner ☒ (check if applies)
Hearing Investigation Read to and Discussed with Prisoner ☒ (check if applies)
No Hearing Investigation Requested ☐ (check if applies)

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**

Prisoner's oral statement at hearing: not guilty. I was not in the lobby but in the bathroom on my wing. Also there is no detail in the report what I was to have destroyed. I want my witnesses asked.

The investigation was read and reviewed with prisoner which included: Prisoner's face sheet, Reporter was a unit regular, Cell use history. The misconduct sanction screening form. Prisoner's witnesses are not needed - the video will show if he was in the lobby or not and involved in the cited behavior or not. He may not directly confront the reporter. Other staff are not needed. Prisoner had a 5 pg. statement in the record.

Video seen outside the prisoner's presence and held confidential as to show prisoner would allow him to know monitoring ability of fixed mounted cameras and compromise security. This included video still provided by facility.

The prisoner had nothing to add.

The prisoner was told findings would be made after all charged prisoners had been interviewed. The report was then typed outside the prisoner's presence. This hearing conducted via Tele-video conferencing.

**REASONS FOR FINDINGS**

Incite to Riot or Strike; Rioting or Striking PD 03.03.105 (022) Advocating or instigating actions which are intended to seriously endanger the physical safety of the facility, persons, or property or to disrupt the operation of the facility by group cessation of normal activity; participation in such action. I uphold this charge. The prisoner claimed he was not in the lobby. He was. He is clearly seen in the lobby and his statements in the record indicate he knew what occurred there. If he was in the bathroom he would not have known nor would have asked the some of the questions he did. The prisoner was one in the lobby and was one of those who joined with others in a show of force against the officers. It was he and others who then followed officers towards the exit. (He did allow other prisoner to go first and he walked in the middle of the group) He was an active participant in the action intended to threaten injury to staff and to endanger their physical safety. His witnesses are not necessary - staff and prisoners - in light of the video and what it showed in regards to his actions.

Destruction or Misuse of Property MDOC PD 03.03.105 (427) Any destruction, removal, alteration, or other unauthorized use of property; I dismiss this spearate charge as the report does not indicate what specific action this priosnre took in regards to the destruction which occurred during the incident.

**PROPERTY DISPOSITION** (for contraband see PD 04.07.112)

N/A

Copied 9-26-20

**FINDINGS**

| Charge No. | Guilty | Not Guilty | Dismissed | Reporting Code |
|---|---|---|---|---|
| Charge No. 1 | ☒ | ☐ | ☐ | 022 |
| Charge No. 2 | ☐ | ☐ | ☒ | 027 |
| Charge No. 3 | ☐ | ☐ | ☐ | |
| Charge No. 4 | ☐ | ☐ | ☐ | |

**DISPOSITION** (select one or more) (Toplock & LOP Sanctions End at 6:00 am)

| | Begins | Ends | | |
|---|---|---|---|---|
| ___ Days of Detention | | | ___ | Days Credit |
| ___ Days Top Lock | | | ___ | Hours Extra Duty |
| 30 Days Loss of Privileges | 09/24/2020 | 10/24/2020 | $ ___ | Restitution |

Misconduct Hearing Report personally handed to Prisoner by Hearing Officer on this date: ___ (Check if Applies) ☐

Hearing Report given to Staff Member by Hearing Officer for Delivery to Prisoner this date: **9/23/2020** (Check if Applies) ☒

Date of Hearing **09/21/2020**    Name of Staff Member **Capt. A. Makela**

Hearing Officer's Name: Thomas O. Mohrman 040
Hearing Officer's Signature: *Thomas O. Mohrman*
Date: 9/21/2020

Distribution: Record Officer, Central Office File, Prisoner, Counselor File, Hearing Investigator

8

(ECF No. 22-4, PageID.144.)

Hardrick's Class I Misconduct Hearing Report reflects that he defended his charges by asserting that he was not in the Neebish Unit lobby during the riot, but rather in the bathroom. Class I Misconduct Hearing Officer Thomas O. Mohrman determined that Hardrick's allegations were untrue; video showed that Hardrick was in the lobby of the unit, as did Hardrick's personal knowledge of events that took place in the lobby.

A Hearing Officer's determinations are entitled to the same preclusive effect they would be given in state courts when: "1) the state agency 'acted in a judicial capacity'; 2) the hearing officer 'resolved a disputed issue of fact that was properly before it'; [and] 3) the prisoner 'had an adequate opportunity to litigate the factual dispute[.]'" *Maben v. Thelen*, 887 F.3d 252, 259 (6th Cir. 2018) (quoting *Peterson*, 714 F.3d at 911-13). There is no question that Hearing Officer Mohrman acted in a judicial capacity in Hardrick's Class I misconduct hearing or that the Class I misconduct hearing process gave Hardrick an opportunity to litigate any factual dispute. *Peterson*, 714 F.3d at 912-13. And, assuming that the factual disputes were properly before Hearing Officer Mohrman, his findings would be given preclusive effect by the Michigan Courts. *Id.* at 914-17. As such, the preclusive effect of Hearing Officer Mohrman's findings depends upon whether the factual disputes were properly before him at the Class I Misconduct hearing.

In the opinion of the undersigned, whether Hardrick was in the Neebish Unit lobby participating in the riot, or elsewhere in Neebish Unit was a fact properly before

9

Hearing Officer Mohrman. As such, Hearing Officer Mohrman's finding that Hardrick was in the Neebish Unit lobby is entitled to preclusive effect. And if Hardrick was in the Neebish Unit lobby participating in the riot, he could not have been in the bathroom enduring the abuse he alleges in his complaint. As such, Hardrick's deliberate indifference claims fail; Defendants were not deliberately indifferent to his serious risk of harm related to sexual assault, nor were they deliberately indifferent to his serious medical needs following a sexual assault. Accordingly, Hardrick's complaint is frivolous and fails to state a claim.

The frivolous nature of Hardrick's complaint is further illuminated by Hardrick's affidavit in another case before this Court: *Raines v. Martin., et al.*, W.D. Mich. Case No. 2:21-cv-108. (ECF No. 29-1, PageID.191-192.) There, Hardrick swore that he observed Raines being sexually assaulted in a different URF restroom on September 14, 2020. (*Id.*, PageID.191.) Specifically, Hardrick said that he witnessed two inmates holding Raines down while a third performed sex acts on the victim. Hardrick says that when additional inmates entered the stall, Hardrick left in order to avoid being associated with sexual assault. (*Id.*) Hardrick closed his affidavit with the following:

> The only reason that I am speaking on this, at this point and time, is because a friend of mines told me that something like this had happen to him also that night. And if it could happen to them, it could happen to me and I would hope someone would help me as well as speak out.

(*Id.*, PageID.192.) This sworn statement directly contradicts Hardrick's sexual assault claims in this case.

## IV.    Recommendation

The undersigned respectfully recommends that the Court dismiss this action as frivolous and for failure to state a claim. The Class I Misconduct Hearing Officer's determination that Hardrick was in the lobby participating in the September 13, 2020 riot and not in the bathroom is entitled to preclusive effect. And Hardrick's affidavit in *Raines v. Martin., et al.*, further establishes the fanciful nature of Hardrick's allegations.

Dated:   September 29, 2022                            /s/ *Maarten Vermaat*
                                                                         MAARTEN VERMAAT
                                                                         U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).