UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BERNARD HARDRICK, #606507,

        Plaintiff,

v.

UNKNOWN FORREST, et al.,

        Defendants.
_____/

Case No. 2:21-cv-238

Hon. Robert J. Jonker
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment based solely on Plaintiff's failure to exhaust.  (ECF No. 21, 27.)

Plaintiff — state prisoner Bernard Hardrick — filed suit pursuant to 42 U.S.C. § 1983 on November 24, 2021.  In his verified complaint, Hardrick alleged that while he was confined at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan, URF employees violated his Eighth Amendment rights by acting with deliberate indifference to a serious risk of harm.  He further alleged that while he was confined at the Marquette Branch Prison (MBP) in Marquette, Michigan, MBP employees violated his Eighth Amendment rights by acting with deliberate indifference to his serious medical needs.  (ECF No. 1, PageID.2.)  Specifically, Hardrick claimed that on September 13, 2020, Defendants Corrections Officer (CO) Forrest, CO Lounds, Sergeant (Sgt.) Jefferies, and two unknown COs ("the URF Officers") locked down his

housing unit at URF from the officer's station after a fight broke out in the unit's dayroom. (*Id.*, PageID.3.) Hardrick said that he was trapped in the hallway, and that when he asked the officers to let him into his cell where he would be safe, the officers denied his request, and fled the unit. (*Id.*, PageID.3-4.) Hardrick alleged that after the officers fled the unit, he was sexually assaulted by three masked inmates. (*Id.*, PageID.4-6.)

The next day, Hardrick was transferred to MBP, where he repeatedly informed Defendant Warden Huss that he had been sexually assaulted. (*Id.*, PageID.6-7.) When Huss ignored Hardrick's complaints, Hardrick informed Defendant Registered Nurse (RN) Kubont about the sexual assault. (*Id.*, PageID.7-8.) Kubont said that Hardrick was supposed to be scheduled for a medical examination, but that the examination was not considered emergent, so she did not know when Hardrick would be seen. (*Id.*, PageID.8.)

On June 22, 2022, Defendants Forrest, Huss, Jefferies, and Kubont moved for summary judgment based solely on Hardrick's failure to exhaust his administrative remedies. (ECF No. 21.) On July 13, 2022, Defendant Lounds moved for summary judgment based solely on Hardick's failure to exhaust his administrative remedies. (ECF No. 27.)

On September 29, 2022, the undersigned issued an R&R recommending that the Court dismiss Hardrick's case not because Hardrick failed to exhaust his administrative remedies, but because Hardrick's complaint was frivolous or failed to state a claim. (ECF No. 33, PageID.207-212.) The undersigned held Defendants'

2

motions for summary judgment in abeyance pending the Court's decision on that R&R. (*Id.*, PageID.204.) On October 18, 2022, District Judge Robert J. Jonker rejected the R&R, finding that the record did not establish that Hardick's complaint was frivolous or failed to state a claim. (ECF No. 36, PageID.221-223.) The undersigned now addresses Defendants' motions for summary judgment based on failure to exhaust.

Defendants assert that Hardick failed to appeal any grievances against them through Step III of the grievance process. (ECF No. 22, PageID.96-97; ECF No. 27, PageID.183.) In response, Hardrick says that he filed PREA and non-PREA grievances on October 1, 2020 and another non-PREA grievance on November 1, 2020. (ECF No. 25, PageID.168-169, 171-172; ECF No. 30, PageID.194.) Hardrick says that the grievances were never processed, and, therefore, that administrative remedies were unavailable to him. (ECF No. 25, PageID.168-169, 171-172; ECF No. 30, PageID.194.) Defendants reply that Hardrick's grievance records demonstrate that he was able to exhaust other non-PREA grievances in October of 2020 without issue, and that even if Hardrick had filed the alleged grievances, the non-PREA grievances were untimely. (ECF No. 29, PageID.188.)

The undersigned respectfully recommends that the Court deny Defendants' motions for summary judgment because there are genuine issues as to whether Hardrick attempted to properly exhaust the PREA and non-PREA grievance processes, and whether those attempts were then thwarted. Although Defendants have established that the non-PREA grievance Hardrick claims to have filed on

3

October 1, 2020 would have been untimely as to his claim against the URF Officers, Defendants have not established that the grievance would have been untimely as to Warden Huss. Furthermore, Defendants have not established that Hardrick's October 1, 2020 PREA grievance would have been untimely or otherwise procedurally defective. And the grievance that Hardrick claims to have filed on November 1, 2020 would have been timely in relation to his claim against RN Kubont. As such, Hardrick's verified factual allegations create genuine issues of material fact sufficient to overcome Defendants' motions for summary judgment.

## II.     Factual Allegations

The majority of Hardrick's factual allegations were set forth in the R&R issued on September 29. Those allegations are as follows:

> In his verified complaint, Hardrick says that he was incarcerated in the Neebish Unit at URF on September 13, 2020 when three inmates began to fight. (*Id.*, PageID.3.) Hardrick says that after the fight, Defendants CO Forrest, CO Lounds, Sgt. Jefferies, and two unknown Corrections Officers locked the unit down from the officer's station. In doing so, the officers caused many of the inmates in the day rooms, including Hardrick, to be locked out of their cells. (*Id.*) Hardrick says that the inmates who were locked out of their cells became frustrated, and that Hardrick approached the officer's station and asked to be let into his cell. CO Forrest and Sgt. Jefferies allegedly told Hardrick that they were not opening any cells until inmates in the Neebish Unit calmed down. (*Id.*) At this point, Hardrick says that several other inmates rushed the officer's station demanding to be let into their cells. According to Hardrick, this caused the officers to flee, with CO Forrest yelling "good luck Hardrick" on his way out of the unit. (*Id.*, PageID.3-4.)
>
> Hardrick says that after the officers fled, Neebish Unit inmates began to riot. (*Id.*, PageID.4.) Hardrick "sought shelter" from the riot in the B-Wing bathroom. About an hour later, Hardrick says that a masked inmate entered the bathroom and approached the stall Hardrick was sitting in. (*Id.*) When Hardrick tried to leave, the inmate allegedly

4

pulled out a shank, and told Hardrick to sit back down.  Hardrick says that at this point, two other masked inmates approached, flanking Hardrick.  Those inmates brandished knives.  (*Id.*)

According to Hardrick, the inmates flanking him pressed their knives to his shoulder and his neck.  (*Id.*, PageID.5.)  The inmate standing in front of Hardrick then placed his shank under Hardrick's chin and told Hardrick to perform fellatio.  Hardrick says that he attempted to flee, but the masked inmates grabbed him, and began punching him repeatedly.  (*Id.*)  After his failed attempt, Hardrick says that one of the inmates orally penetrated him.  (*Id.*)

Hardrick says that after the assault, and after URF employees contained the disturbance in Neebish Unit, he was too embarrassed to tell URF staff what had happened.  (*Id.*, PageID.6.)  The next morning, Hardrick was transferred to MBP.  Hardrick says that upon his arrival, he informed Defendant Warden Huss about the sexual assault.  Warden Huss allegedly responded: "Come on, seriously.  You're too big to be victimized in such a manner; I could see maybe if it happened the other way around and you were the victimizer."  (*Id.*)  Hardrick says that he spoke to Huss about the assault again on October 1, 2020, asking if she had reported the sexual assault to the PREA investigator at MBP.  (*Id.*, PageID.7.)  Huss allegedly told Hardrick that she had more urgent concerns, and that he should file a grievance.  (*Id.*)  The same day, Hardrick filed a PREA grievance, and a regular grievance against the URF Officers and Huss for deliberate indifference.

On October 23, 2020, Hardrick says that he inquired as to the status of his PREA grievance as he had not received a number for his grievance and had not been seen by medical staff.  (*Id.*)  Huss informed Hardrick that the grievance had been received and processed, but that Hardrick's complaint "did not rise to the level of urgency to be considered an emergency that warrants priority over other Covid emergencies."

On November 1, 2020, Hardrick informed MBP RN Kubont about the sexual assault.  (*Id.*)  Kubont allegedly told Hardick that she was aware of his assault, and that he was supposed to be scheduled for a medical examination.  (*Id.*, PageID.8.)  But Kubont also stated that Hardrick was not the only prisoner claiming to have been sexually assaulted during the riot, and that Hardrick's situation was not considered urgent.  On December 15, 2020, after months of waiting for his Step I response, Hardrick filed a Step II PREA grievance, this time including allegations against Kubont.  (*Id.*)

5

(ECF No. 33, PageID.205-207.)

In addition, Hardrick's verified complaint provides more specifics regarding the content and timeline of his grievances.  Hardrick says that his October 1, 2020 PREA grievance complained that the URF Defendants abandoned their post during the riot, leading to his sexual assault, and that Warden Huss was deliberately indifferent to the injuries Hardrick received as a result of the sexual assault.  (ECF No. 1, PageID.8.)  Hardrick reiterates that after receiving no response from the Step I PREA grievance, he filed a Step II PREA grievance on December 15, 2020.  (*Id.*)

According to Hardrick, his October 1, 2020 non-PREA grievance similarly concerned the URF Defendants' actions in abandoning post during the riot, and Warden Huss's deliberate indifference to Hardrick's resulting medical needs.  (*Id.*, PageID.9.)  Hardrick says that after he received no response to this grievance, he filed a Step II grievance on November 17, 2020.  (*Id.*)  After receiving no response to the Step II grievance, Hardrick claims to have filed a Step III grievance on November 5, 2020.  (*Id.*)

Finally, Hardrick says that after speaking to RN Kubont on November 1, 2020, he filed a Step I grievance against her for deliberate indifference to his medical needs resulting from the sexual assault.  (*Id.*)  After receiving no response to this grievance, Hardrick says that he filed a Step II grievance on November 17, 2020.  (*Id.*)  After receiving no response to the Step II grievance, Hardrick claims to have filed a Step III grievance "on or about December 3, 2020."  (*Id.*)  Hardrick attached unprocessed

(alternatively known as "goldenrod") copies of all of the relevant grievances to his verified complaint. (ECF Nos. 1-1, 1-2, 1-3.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[1] If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct an evidentiary hearing to resolve the issue. (*Id.*) In an evidentiary hearing on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in an evidentiary hearing on exhaustion).

### IV. Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).

8

To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison

9

administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Department of Corrections (MDOC) P.D. 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147, at *6 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

V. **Analysis**

As set forth above, Hardrick claims that he filed grievances with respect to all of his claims, and that he properly appealed those grievances. (ECF No. 1, PageID.8-

9; ECF No. 25, PageID.165.) However, Hardrick says that the grievances were never processed, and the grievance process was therefore unavailable to him. (ECF No. 1, PageID.8-9; ECF No. 25, PageID.165.)

Defendants say that there is no evidence that Hardrick attempted to file grievances. (ECF No. 22, PageID.96-97.) As evidence that the grievance process was available to Hardrick, Defendants provide three non-PREA grievances that Hardrick filed in early October of 2020 that were processed and appealed through Step III of the grievance process. (ECF No. 22, PageID.97 (citing ECF No. 97-1, PageID.119 (Hardrick's Step III Grievance Report)).) Finally, Defendants argue that even assuming Hardrick filed non-PREA grievances on October 1, 2020 and November 1, 2020, those grievances were untimely and therefore could not exhaust Hardrick's claims. (*Id.*)

As an initial matter, the undersigned finds that Hardrick's verified allegations are sufficient to create genuine issues of fact as to whether Hardrick submitted relevant grievances on October 1, 2020 and November 1, 2020, and whether facility staff refused to process the grievances. This is so even accepting that the unprocessed grievances attached to Hardrick's complaint do not corroborate his claims.[2] *Moran*

---

[2] The authority that Defendants cite in support of their assertion that "there are no indications that [Hardrick's] grievances were received by the intended recipients," is an opinion and order following an evidentiary hearing on exhaustion. (ECF No. 22, PageID.96-97 (citing *Alexander v. Calzetta*, No. 16-cv-13293, 2019 WL 1011106, at *5 (E.D. Mich. Mar. 4, 2019)).) As set forth above, the standards for summary judgment motion based on exhaustion and for an evidentiary hearing on exhaustion are different. In an evidentiary hearing on exhaustion, the Court may, and indeed must, weigh the credibility of the evidence provided.

12

*v. Al Basit LLC*, 788 F.3d 201, 206 (6th Cir. 2015) ("Despite the lack of corroborating evidence, Plaintiff's testimony is sufficient to create a genuine dispute of material fact that forecloses summary judgment at this juncture.").

Furthermore, the grievance records provided by Defendants do not constitute "significant probative evidence 'so powerful that no reasonable jury would be free to disbelieve'" Hardrick's allegations that he was thwarted from exhausting the present claims. *Lamb v. Kendrick*, No. 21-3390, 2022 WL 14713620 (6th Cir. Oct. 26, 2022) (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Though the fact that Hardrick was able to file and appeal additional grievances during the relevant time frame may cast doubt on his allegations that the relevant grievances were filed but never processed, such doubt is not properly considered by this Court at the summary judgment stage. *Anderson*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") As such, Defendants' entitlement to summary judgment comes down to whether these genuine issues of fact are material. *Id.* at 247-248 ("By its very terms, the standard provides that the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphasis in original)). The undersigned addresses each of the grievances Hardrick alleges to have submitted in turn.

13

### A. Hardrick's October 1, 2020 Grievance

Turning first to Hardrick's October 1, 2020 grievance, the undersigned agrees that the grievance would have been untimely and therefore could not exhaust Hardrick's claims as to the URF Officers. Hardrick alleges that the URF Officers abandoned their post, leading to his sexual assault on September 13, 2020. (ECF No. 1, PageID.3-4.) As set forth above, MDOC P.D. 03.02.130 ¶ Q requires prisoners to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue." It then requires prisoners to file their Step I grievance within five business days of the attempted resolution. *Id.* As such, Hardrick was required to attempt resolution of his claims against the URF Officers by September 15, 2020. He was then required to file his grievance against the officers by September 22, 2020. Accordingly, Hardrick's October 1, 2020 grievance could not have served to exhaust his claims against the URF Officers. Whether he actually filed the October 1, 2020 grievance is therefore immaterial to the exhaustion of his claims against the URF Officers.

In contrast, the undersigned does not agree that Hardrick's October 1, 2020 grievance would have been untimely as to Warden Huss. True, Hardrick claims to have reported his sexual assault to Huss on September 14, 2020. (ECF No. 1, PageID.6.) But it was not until October 1, 2020 that Hardrick says he learned that the Warden failed to take action. (*Id.*, PageID.7.) Accordingly, a reasonable jury could find that Hardrick properly submitted the October 1, 2020 grievance against Warden Huss, but that the grievance process was rendered unavailable when facility

staff failed to process the grievance. In other words, whether Hardrick attempted to file the October 1, 2020 grievance is material to the exhaustion of his claim against Warden Huss.

### B. Hardrick's October 1, 2020 PREA Grievance.

Turning then to Hardrick's October 1, 2020 PREA grievance, Defendants assert simply that the grievance was "never received and therefore never processed" as evidenced by the MDOC's PREA records and an affidavit from Litigation Specialist Jaquine Castillo. (ECF No. 22, PageID.97 (citing ECF No. 22-3, PageID.142-143 (Affidavit of Castillo); ECF No. 22-4, PageID.158-160 (PREA Records)).) Defendants do not assert that the PREA grievance was untimely or otherwise defective, or that the PREA grievance process was not the appropriate avenue for exhausting Hardrick's claims. Nor do Defendants so much as provide the policy directive governing the PREA grievance process. Defendants bear the burden of proving either that the PREA grievance process was not the appropriate administrative remedy, or that Hardrick did not properly pursue the remedy; they have not. *Jones*, 549 U.S. 199, 212-16 (2007). Accordingly, on the record currently before the Court, a reasonable jury could find that Hardrick properly submitted the October 1, 2020 PREA grievance, but that the PREA grievance process was rendered unavailable when facility staff failed to process the grievance. In other words, whether Hardrick attempted to file the October 1, 2020 PREA grievance is material to the exhaustion of his claims against the URF Officers and Warden Huss.

### C. Hardrick's November 1, 2020 Grievance.

The undersigned turns finally to Hardrick's November 1, 2020 grievance against RN Kubont. The undersigned again disagrees with Defendants' position that the grievance would have been untimely as to Hardrick's claims against RN Kubont. (ECF No. 22, PageID.97.) Hardrick says that he first informed Kubont of the sexual assault on November 1, 2020, at which point Kubont said that she was aware of the assault, but there was no telling how long it would be before Hardrick would receive medical care. (ECF No. 1, PageID.7-8.) Accordingly, a reasonable jury could find that Hardrick properly submitted the November 1, 2020 grievance against RN Kubont, but that the grievance process was rendered unavailable when facility staff failed to process the grievance. In other words, whether Hardrick attempted to file the November 1, 2020 grievance is material to the exhaustion of his claim against RN Kubont.

In sum, the undersigned finds that there are genuine issues of material fact concerning whether Hardrick attempted to exhaust his claims (1) against Warden Huss through the non-PREA and PREA grievance processes, (2) against the URF Officers through the PREA grievance process, and (3) against RN Kubont through the non-PREA grievance process, but was thwarted from doing so.

### VI. Recommendation

The undersigned respectfully recommends that the Court deny Defendants' motions for summary judgment (ECF Nos. 21, 27) because there are genuine issues

as to whether Hardrick attempted to properly exhaust the PREA and non-PREA grievance processes, and whether those attempts were then thwarted.

If the Court accepts this recommendation, all of Hardrick's claims will remain. Defendants may move for an evidentiary hearing on the issue of exhaustion.


Dated:   November 8, 2022                                         /s/ *Maarten Vermaat*
                                                                  MAARTEN VERMAAT
                                                                  U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).