UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BERNARD HARDRICK, #606507,                    Case No. 2:21-cv-238

              Plaintiff,                       Hon. Robert J. Jonker
                                              U.S. District Judge
      v.

UNKNOWN FORREST, et al.,

              Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.    Introduction

      This Report and Recommendation (R&R) addresses Defendants' motion for
summary judgment.  (ECF No. 42.)

      Plaintiff — state prisoner Bernard Hardrick — filed suit pursuant to 42 U.S.C.
§ 1983 on November 24, 2021.  In his verified complaint, Hardrick alleged that while
he was confined at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan,
URF employees violated his Eighth Amendment rights by failing to protect him from
other inmates during a prison riot.  (ECF No. 1, PageID.2.)  Further, Hardrick alleged
that after he was transferred to Marquette Branch Prison (MBP) in Marquette,
Michigan following the riot, MBP employees acted with deliberate indifference to his
serious medical needs.  (*Id.*)

       Specifically, Hardrick claimed that on September 13, 2020, Defendants
Corrections Officer (CO) Forrest, CO Lounds, Sergeant (Sgt.) Jefferies, and two

unknown corrections officers locked-down his housing unit from the officer's station after a fight broke out in the unit's dayroom.  (*Id.*, PageID.3.)  Hardrick said that he was trapped in the hallway, and that when he asked the officers to let him into his cell where he would be safe, the officers denied his request and fled the unit.  (*Id.*, PageID.3-4.)  Hardrick alleged that after the officers fled the unit, he was sexually assaulted by three masked inmates.  (*Id.*, PageID.4-6.)  The next day, Hardrick was transferred to Marquette Branch Prison (MBP) in Marquette, Michigan.

Following his transfer to MBP, Hardrick says that he repeatedly informed Defendant Warden Huss that he had been sexually assaulted.  (*Id.*, PageID.6-7.)  When Huss ignored Hardrick's complaints, Hardrick informed Defendant Registered Nurse (RN) Kubont about the sexual assault.  (*Id.*, PageID.7-8.)  Kubont said that Hardrick was supposed to be scheduled for a medical examination, but that the examination was not considered emergent, so she did not know when Hardrick would be seen.  (*Id.*, PageID.8.)

Defendants now move for summary judgment.[1]  (ECF No. 42.)  Defendants say that the alleged attack on Hardrick occurred during a prison riot.  (ECF No. 43, PageID.258.)  Defendants argue that they did not knowingly disregard any risk that Hardrick would be assaulted during that riot.  (*Id.*)  Furthermore, Defendants assert that Hardrick participated in the riot, and therefore assumed any risk of harm associated therewith.  (*Id.*, PageID.260-261.)  With respect to Hardrick's medical

---

[1]    All Defendants other than the unknown corrections officers join in the summary judgment motion.

claims, Defendants aver that Hardrick has not established that he had serious medical needs following his assault, let alone that Defendants were deliberately indifferent to those needs. (*Id.*, PageID.262-266.)

In response, Hardrick avers that there are genuine issues of material fact as to all of the elements of his claims. (ECF No. 45, PageID.299.) Hardrick reiterates that he told Defendants Forrest, Lounds, and Jefferies that he feared for his safety on September 13, 2020, and they nevertheless refused to open his cell door. (*Id.*, PageID.300.) Moreover, he alleges that the risks associated with abandoning the housing unit mid-riot should have been obvious to Defendants. (*Id.*) With respect to his medical claims, Hardrick avers that his exposure to bodily fluids and potential exposure to sexually transmitted infections constituted sufficiently serious medical needs. (*Id.*, PageID.303.) And he claims that by failing to evaluate Hardrick for sexually transmitted infections, Defendants Huss and Kubont acted with deliberate indifference to his serious medical needs. (*Id.*)

The undersigned respectfully recommends that the Court grant Defendants' motion for summary judgment. (ECF No. 42.) In the undersigned's opinion, there are no genuine issues of material fact. Furthermore, Hardrick's allegations that Defendants Forrest, Lounds, and Jeffries locked down and later fled his housing unit amidst a prison riot do not establish an Eighth Amendment violation. And Hardrick's allegations that Defendants Huss and Kubont did not provide him with medical treatment following his alleged sexual assault, which did not cause him injury, and which occurred during state of emergency due to the Covid-19 pandemic, do not

establish that Huss or Kubont acted with deliberate indifference to his serious medical needs.

Additionally, the undersigned recommends that that the Court dismiss Hardrick's claim against the unknown corrections officers for failure to serve in accordance with Federal Rule of Civil Procedure 4(m).

## II.    Factual Allegations

The undersigned previously summarized the factual allegations in Hardrick's complaint as follows:

> In his verified complaint, Hardrick says that he was incarcerated in the Neebish Unit at URF on September 13, 2020 when three inmates began to fight. (*Id.*, PageID.3.) Hardrick says that after the fight, Defendants CO Forrest, CO Lounds, Sgt. Jefferies, and two unknown Corrections Officers locked the unit down from the officer's station. In doing so, the officers caused many of the inmates in the day rooms, including Hardrick, to be locked out of their cells. (*Id.*) Hardrick says that the inmates who were locked out of their cells became frustrated, and that Hardrick approached the officer's station and asked to be let into his cell.[2] CO Forrest and Sgt. Jefferies allegedly told Hardrick that they were not opening any cells until inmates in the Neebish Unit calmed down. (*Id.*) At this point, Hardrick says that several other inmates rushed the officer's station demanding to be let into their cells. According to Hardrick, this caused the officers to flee, with CO Forrest yelling "good luck Hardrick" on his way out of the unit. (*Id.*, PageID.3-4.)
>
> Hardrick says that after the officers fled, Neebish Unit inmates began to riot. (*Id.*, PageID.4.) Hardrick "sought shelter" from the riot in the B-Wing bathroom. About an hour later, Hardrick says that a masked inmate entered the bathroom and approached the stall Hardrick was sitting in. (*Id.*) When Hardrick tried to leave, the inmate allegedly pulled out a shank, and told Hardrick to sit back down. Hardrick says that at this point, two other masked inmates approached, flanking Hardrick. Those inmates brandished knives. (*Id.*)

---

[2]    Hardrick alleges that he told the officers he was "afraid to be out and feared for his safety." (ECF No. 1, PageID.3.)

According to Hardrick, the inmates flanking him pressed their knives to his shoulder and his neck. (*Id.*, PageID.5.) The inmate standing in front of Hardrick then placed his shank under Hardrick's chin and told Hardrick to perform fellatio. Hardrick says that he attempted to flee, but the masked inmates grabbed him, and began punching him repeatedly. (*Id.*) After his failed attempt, Hardrick says that one of the inmates orally penetrated him. (*Id.*)

Hardrick says that after the assault, and after URF employees contained the disturbance in Neebish Unit, he was too embarrassed to tell URF staff what had happened. (*Id.*, PageID.6.) The next morning, Hardrick was transferred to MBP. Hardrick says that upon his arrival, he informed Defendant Warden Huss about the sexual assault. Warden Huss allegedly responded: "Come on, seriously. You're too big to be victimized in such a manner; I could see maybe if it happened the other way around and you were the victimizer." (*Id.*) Hardrick says that he spoke to Huss about the assault again on October 1, 2020, asking if she had reported the sexual assault to the PREA investigator at MBP. (*Id.*, PageID.7.) Huss allegedly told Hardrick that she had more urgent concerns, and that he should file a grievance. (*Id.*) The same day, Hardrick filed a PREA grievance, and a regular grievance against the URF Officers and Huss for deliberate indifference.

On October 23, 2020, Hardrick says that he inquired as to the status of his PREA grievance as he had not received a number for his grievance and had not been seen by medical staff. (*Id.*) Huss informed Hardrick that the grievance had been received and processed, but that Hardrick's complaint "did not rise to the level of urgency to be considered an emergency that warrants priority over other Covid emergencies."

On November 1, 2020, Hardrick informed MBP RN Kubont about the sexual assault. (*Id.*) Kubont allegedly told Hardick that she was aware of his assault, and that he was supposed to be scheduled for a medical examination. (*Id.*, PageID.8.) But Kubont also stated that Hardrick was not the only prisoner claiming to have been sexually assaulted during the riot, and that Hardrick's situation was not considered urgent. On December 15, 2020, after months of waiting for his Step I response, Hardrick filed a Step II PREA grievance, this time including allegations against Kubont. (*Id.*)

(ECF No. 33, PageID.205-207.)

### III.    Relevant Procedural History

In June and July of 2022, Defendants moved for summary judgment based solely on Hardrick's failure to exhaust his administrative remedies.  (ECF Nos. 21, 27.)  On September 29, 2022, the undersigned issued an R&R recommending that the Court dismiss this case in accordance with 28 U.S.C. § 1915(e) because Hardrick's complaint was frivolous and failed to state a claim.  (ECF No. 33, PageID.207-212.)  Specifically, the undersigned concluded that a copy of a Class I Misconduct Report related to the September 13, 2020, incident, and an affidavit that Hardrick submitted in another case, both of which were attached to Defendants' motions, contradicted the factual allegations in his complaint and rendered it frivolous. (*Id.*, PageID.212.)  The undersigned held Defendants' motions for summary judgment in abeyance pending the Court's decision on that R&R.  (*Id.*, PageID.204.)  District Judge Robert J. Jonker rejected the R&R, finding that the record did not establish that Hardrick's complaint was frivolous or failed to state a claim.  (ECF No. 36, PageID.221-223.)  The undersigned then issued an R&R recommending that the Court deny Defendants' exhaustion-related motions for summary judgment (ECF No. 37, PageID.239-240), which Judge Jonker approved and adopted (ECF No. 39, PageID.243).

### IV.    Summary Judgment

Defendants move for summary judgment.  (ECF No. 42.)  Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466,

468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### a. Eighth Amendment

Hardrick asserts two, distinct Eighth Amendment claims: (1) failure to protect Hardrick during the URF riot, and (2) deliberate indifference to serious medical needs following Hardrick's alleged sexual assault.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions

intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

### b.  Deliberate Indifference: Failure to Protect

Hardrick first alleges that Defendants Forrest, Lounds, Jefferies, and two unknown corrections officers failed to protect him from other URF inmates when they locked him out of his cell and then abandoned the Neebish Unit on September 13, 2020.  (ECF No. 1, PageID.3.)  According to Hardrick, CO Forrest and Sgt. Jefferies told Hardrick that they were not opening any doors in the Neebish Unit until the inmates calmed down.  It was at this point that inmates in the Neebish Unit rushed the officers, causing them to flee.  (*Id.*)  Hardrick says that CO Forrest wished him luck as the officers fled.  During the ensuing riot in the Neebish Unit, Hardrick says that he was sexually assaulted.  (*Id.*, PageID.4-6.)

Under the Eighth Amendment, prison officials must take reasonable measures "to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (quoting *Cortes–Quinones v. Jimenez–Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)).  To establish a claim for failure to protect, a plaintiff must show that prison officials acted with deliberate indifference to "a substantial risk of serious harm." *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).  Deliberate indifference has both an objective and a subjective component.   *Id.*   To satisfy the objective component, a prisoner must "show that he is incarcerated under conditions posing a substantial

risk of serious harm." *Farmer*, 511 U.S. at 834.  To satisfy the subjective component, a prisoner must show that the defendant knew the prisoner faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it."  *Id.* at 847.  Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.  The state of mind necessary to satisfy a deliberate indifference claim is akin to criminal recklessness.  *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018).

Defendants do little to contest Hardrick's factual allegations.  Instead, Defendants aver that Hardrick cannot establish the subjective component of his deliberate indifference claim for two reasons.  (ECF No. 43, PageID.258-260.)  First, although Hardrick says that he was sexually assaulted during the URF riot, Defendants Forrest, Lounds, and Jefferies were not aware of a substantial risk that Hardrick would be seriously harmed during the riot.  (*Id.*, PageID.258-259.)  Second, Defendants Forrest, Lounds, and Jefferies did not act with deliberate indifference to the risks that the riot posed to Neebish Unit inmates, they acted to preserve their own safety in response to inmates rushing their station.  (*Id.*, PageID.259-260.)

Before addressing Defendants' arguments, the undersigned emphasizes that Hardrick's claims arose during a riot in his housing unit.  In *Whitley v. Albers*, a prisoner alleged that officials violated his Eighth Amendment rights when they shot him during a prison riot.  475 U.S. 312, 314 (1986).  At the time, the officials were attempting to free a prison guard who had been taken hostage by riotous inmates.

9

*Id.*, PageID.315-16.  The Court found that a deliberate indifference standard was inappropriate under the circumstances, explaining that:

> In making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used. As we said in *Hudson v. Palmer*, 468 U.S. 517, 526–527, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984), prison administrators are charged with the responsibility of ensuring the safety of the prison staff, administrative personnel, and visitors, as well as the "obligation to take reasonable measures to guarantee the safety of the inmates themselves." **In this setting, a deliberate indifference standard does not adequately capture the importance of such competing obligations, or convey the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance.**

*Whitley v. Albers*, 475 U.S. 312, 322 (1986) (emphasis added).    Accordingly, in determining whether the prison officials violated the plaintiff's Eighth Amendment rights, the *Whitley* Court considered not whether the officials were deliberately indifferent to a substantial risk of serious harm, but "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320-21 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).  After determining that "the actual shooting was part and parcel of a good-faith effort to restore prison security," the Court found that the plaintiff's Eighth Amendment rights had not been violated.  *Id.* at 326.

This case is not perfectly analogous.  In lieu of using force during the URF riot, Defendants Forrest, Lound, and Jeffries locked down and ultimately fled the Neebish Unit.  Still, in the opinion of the undersigned, the principle underlying *Whitley*

applies.  *Whitley* recognizes that during prison riots, prison officials must make split-second decisions to protect the health and safety of not only the prisoners, but also the prison staff.  And it further recognizes that the traditional deliberate indifference standard does not adequately account for such "competing obligations."  *Id.* at 322.

As set forth above, Defendants do not contest Hardrick's factual allegations; thus, there are no genuine issues of material fact.  Per Hardrick's allegations, Defendants Forrest, Lounds, and Jefferies determined that an inmate altercation warranted a lock-down of the Neebish Unit.  (ECF No. 1, PageID.3.)  And after "a mass group of disgruntled inmates" (Hardrick's words) rushed the officers, the officers further determined that it was necessary for them to leave the unit.  (*Id.*)  In light of the Court's opinion in *Whitley*, it appears that to succeed on an Eighth Amendment claim against Forrest, Lounds, and Jeffries, Hardrick must show that the officers acted in bad faith, or for no legitimate purpose. *Whitley*, 475 U.S. at 322. He has not done so.  Accordingly, it is the undersigned's opinion that Defendants Forrest, Lound, and Jeffries are entitled to "wide-ranging deference" with respect to the measures they took "in response to an actual confrontation with riotous inmates." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).  And it is therefore the undersigned's opinion that Defendants Forrest, Lounds, and Jeffries are entitled to summary judgment as to Hardrick's Eighth Amendment claim against them.

But even if the Court applies the traditional formulation of the deliberate indifference standard, the undersigned recommends that the Court grant Defendants Forrest, Lounds, and Jefferies's summary judgment on Hardrick's claim against

them.  As indicated by Defendants in their brief, the record is devoid of evidence that Forrest, Lounds, or Jefferies were aware of a substantial risk of serious harm to Hardrick on September 13, 2020.  Hardrick alleges that at the time the officers fled Neebish Unit, there were inmates locked in the dayrooms, the hallways, and the cells. Hardrick was one of the inmates locked in the hallway.  (ECF No. 1, PageID.3.)  And while he allegedly told the officers that he generally feared for his safety while he was locked out of his cell, Hardrick does not allege that he was locked in the hallway with prisoners that he or the officers knew posed a serious threat to his safety.  (*Id.*)  In fact, Hardrick admitted during a March 1, 2023, deposition that nobody made any specific threats against him before he spoke to the officers.  (ECF No. 43-2, PageID.275.)

The absence of a specific threat is significant here.  To satisfy the subjective component of a deliberate indifference claim, a plaintiff cannot rely on "a general concern," but must instead identify a "specific, known risk to his safety."  *Gant v. Campbell*, 4 F. App'x 254, 256 (6th Cir. 2001).  Because Hardrick's allegations "do not include particular details that would have justified" his concern for his safety, *Blunt v. Ionia Corr. Facility*, No. 1:13-CV-1048, 2013 WL 6158682, at *4 (W.D. Mich. Nov. 25, 2013), it is the undersigned's opinion that Hardrick has not created a genuine issue of material fact as to the subjective component of his deliberate indifference claim.

Furthermore, even assuming that a prison riot creates an obvious, sufficiently substantial risk of serious harm to any inmate exposed to the riot, Hardrick has not

shown that Defendants "disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.  Per Hardrick's allegations, Defendants Forrest, Lounds, and Jefferies locked down the Neebish Unit following an inmate altercation.  (ECF No. 1, PageID.3.)  When Hardrick asked to be let back into his cell, Forrest and Jefferies allegedly told Hardrick that they were not opening any cells until inmates in the Neebish Unit calmed down.  And the officers only fled Neebish Unit after "a mass group of disgruntled inmates" rushed the officers.  (*Id.*) In the undersigned's opinion, these actions do not display a conscious disregard of the risks posed by the Neebish Unit riot.  Rather, they demonstrate the officer's reasonable efforts to maintain the safety and security of the inmates in the Neebish Unit.[3]

Ultimately, the undersigned is sympathetic to the harm that Hardrick endured during the September 13, 2020, riot in URF's Neebish Unit.  But Hardrick's claim against Defendants Forrest, Lounds, and Jefferies boils down to a general disagreement with the security measures taken in response to the September 13, 2020, prison riot; Hardrick provides no evidence that the officer's acted with a state

---

[3]     In *Doe v. Flakes*, the plaintiff was a transgender inmate who identified as a woman but was incarcerated at a male facility.  No. 8:19-CV-252, 2022 WL 1664470, at *1 (D. Neb. May 25, 2022).  The plaintiff complained that even though her inmate classification forms stated that she was at a high risk of being victimized by other inmates, prison officials failed to protect her from sexual assault during a riot.  *Id.* There, the Court similarly concluded that a prison official's "generalized duty to protect prisoners" does not require an official to "put himself in harm's way in a futile attempt to stop a riot."  *Id.* at *8.

of mind "akin to criminal recklessness."[4]   Accordingly, the undersigned respectfully recommends that the Court grant Defendants Forrest, Lounds, and Jeffries summary judgment as to Hardrick's failure to protect claim against them.

### c. Deliberate Indifference: Serious Medical Needs

Hardrick next alleges that Defendants Huss and Kubont were deliberately indifferent to his serious medical needs following his sexual assault at URF.[5] Hardrick says that after he was transferred to MBP, he reported his assault to Huss and Kubont, but never received medical care or screening related to his assault.  (ECF No. 1, PageID.6-8.)   The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Estelle v. Gamble*, 429 U.S. 102, 104-05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

---

[4]   Because it is the undersigned's opinion that, based on Hardrick's allegations, Defendants Forrest, Lounds, and Jefferies did not act with deliberate indifference on September 13, 2020, the undersigned does not address Defendants' argument that Hardrick assumed a risk of harm by participating in the URF riot.  (ECF No. 43, PageID.260-62.)

[5]   In his complaint and again during his deposition, Hardrick indicated that at least part of his deliberate indifference claim against Defendant Huss is based on her failure to adhere to the Prison Rape Elimination Act (PREA) protocols in the prison, which he says was "deliberately indifferent to his sexual assault."  (ECF No. 1, PageID.11; *see also* ECF No. 43-2, PageID.280.)   But failure to adhere to prison policies, absent more, does not state a claim for deliberate indifference.  *Black v. Parke*, 4 F.3d 442, 448 (6th Cir. 1993) ("There is no constitutional violation when state actors fail to meet their own regulations, so long as the minimum constitutional requirements have been met.")  Nor does the PREA provide prisoners with a private right of action.  *Raines v. Unknown Parties*, No. 2:21-CV-108, 2022 WL 1616946, at *6 (W.D. Mich. May 23, 2022) (citing *Peterson v. Burris*, No. 14-CV-13000, 2016 WL 67528, at *2 (E.D. Mich. Jan. 6, 2016)).   But the undersigned liberally construes Hardrick's complaint as setting forth a claim of deliberate indifference to serious medical needs against Defendant Huss.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (explaining that pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers").

To satisfy the objective component of a medical deliberate indifference claim, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).

Defendants contend that Hardrick's medical deliberate indifference claim fails for a few reasons. Defendants say that Hardrick cannot establish that he had a serious medical need related to the September 13, 2020, assault because he does not allege that he suffered an injury requiring medical care. (ECF No. 43, PageID.263.) Further, Hardrick does not allege that Defendants were aware of a serious medical need resulting from the assault. And Hardrick's medical records show that Hardrick had numerous opportunities to report his medical needs to health care after arriving at MBP, but that he instead reported no symptoms or complaints. (*Id.*, PageID.264.)

Courts have demonstrated a general reluctance to find that sexual assault automatically results in a serious medical need. *See, e.g, Gooden v. Mormon*, 524 F. App'x 593, 596-97 (11th Cir. 2013); *Perry v. Warden Warren Corr. Inst.*, No. 1:20-CV-30, 2022 WL 3369662, at *11 (S.D. Ohio Aug. 16, 2022), *R&R adopted*, No. 1:20-CV-00030, 2022 WL 4493913 (S.D. Ohio Sept. 28, 2022); *Gennoe v. Washburn*, No. 3:19-CV-00478, 2021 WL 3130834, at *12 (M.D. Tenn. July 23, 2021); *Alexander v. Wright*, No. CV 19-507, 2021 WL 3237311, at *4 (M.D. La. June 29, 2021), *R&R adopted*, No. CV 19-507, 2021 WL 3234612, (M.D. La. July 29, 2021). That reluctance is based on the courts' recognition that sexual assault encompasses a wide range of conduct that

15

may or may not lead to injury.  *Gooden*, 524 F. App'x at 597 ("[N]ot all sexual assaults

. . . necessarily cause serious physical injury requiring immediate medical care.");

*Perry*, 2022 WL 3369662, at *11 ("Plaintiff asserts that he reported to Defendants he

was sexually assaulted — not that he was injured or the extent of those injuries.");

*Gennoe*, 2021 WL 3130834, at *12 ("The term 'sexual assault' covers a wide spectrum

of unwanted sexual conduct, not all of it violent or likely to result in physical harm.").

And the Eighth Amendment is concerned only with *serious* medical needs.

Here, Hardrick does not allege that he sustained a physical injury as a result

of the assault, or that the assault left him in need of mental health care that he did

not receive.  Instead, Hardrick says that he was exposed to bodily fluids and should

have been screened for sexually transmitted infections.  (ECF No. 1, PageID.7.)

Based on his exposure to the assailant's bodily fluids, there is a *chance* that Hardrick

was exposed to sexually transmitted infections.  But Hardrick does not allege that he

ever experienced symptoms of a sexually transmitted infection, let alone a sexually

transmitted infection constituting a serious medical need.   To the contrary,

Hardrick's medical records demonstrate that when he was screened by MBP health

care on September 14, 2020, and  October 31, 2020, he reported no medical or mental

health concerns or symptoms.  (ECF No. 43-3, PageID.286-290.)  And he sent but one

medical kite during this time complaining about the way he had been handcuffed by

a corrections officer, not about any concerns related to sexual assault.   (*Id.*,

PageID.288.)  As such, in the undersigned's opinion, Hardrick has not created a

genuine issue of material fact as to whether he was suffering from a serious medical need during his interactions with Huss and Kubont; he was not.

Furthermore, even assuming that every sexual assault that results in exposure to bodily fluids creates a sufficiently serious medical need, Hardrick's allegations do not show that Huss or Kubont were deliberately indifferent to his needs.  Hardrick alleges that when he told Huss about the assault "in vivid detail" on September 14, 2020, she stated: "Come on, seriously.  You're to[o] big to be victimized in such a manner; I could see maybe if it happened the other way around and you were the victimizer."  (ECF No. 1, PageID.6.)  Then, when Hardrick asked Huss whether she had reported the assault on October 1, 2020, Huss essentially told Hardrick to do it himself.  (*Id.*, PageID.7.)  After filing a PREA grievance reporting the assault, Hardrick again encountered Huss, asking why he had not been seen.  Huss explained that MBP was basing the PREA investigation procedure — including medical and mental examinations — on the severity of the allegations because of the state of emergency for the Covid-19 pandemic.  (*Id.*)  On November 1, 2020, Hardrick informed Kubont of his assault, and Kubont reiterated that his case was not considered an emergency and would have to be placed "on the back burner" due to the Covid-19 pandemic.  (*Id.*)

As an initial matter, Hardrick's allegations indicate that Huss did not believe that he had been a victim of sexual assault due to his size.  However distasteful or misguided Huss's alleged statements may have been, an inference of disbelief does not support a claim of deliberate indifference.  *See Mays v. Perala*, No. 2:17-CV-95,

17

2019 WL 4601712, at *2 (W.D. Mich. Sep. 23, 2019) (granting summary judgment because the defendant's refusal to alert medical professionals after plaintiff complained of a forthcoming seizure suggested that the defendant disbelieved the plaintiff, not that he was deliberately indifferent).  Rather, to be liable for deliberate indifference, a prison official must know of and consciously disregard a prisoner's serious medical needs.  *Rhinehart*, 894 F.3d at 736.

Furthermore, by the time Hardrick disclosed his assault to Kubont on November 1, 2020, Hardrick had been evaluated by health care on two occasions without reporting or demonstrating any symptoms of illness.  (ECF No. 43-3, PageID.286-290.)  Significantly, the October 31, 2020, evaluation was conducted by Kubont.  (*Id.*, PageID.289-290.)  Considering his lack of symptoms, and the state of emergency that was in place at the time, the decision to delay a medical examination specific to his alleged sexual assault does not display deliberate indifference to Hardrick's serious medical needs.

In sum, the undersigned recommends that the Court grant Defendants Huss and Kubont summary judgment as to Hardrick's deliberate indifference claim against them for three reasons.  First, Hardrick has not alleged that he suffered injury or symptoms of a sexually transmitted infection such that he required medical treatment.  Second, Hardrick's allegations indicate that Huss did not believe he had a serious medical need, not that she knew of and consciously disregarded his medical needs.  And third, Defendants alleged actions of delaying treatment related to the alleged sexual assault where Hardrick did not complain of an injury or exhibit

symptoms of a sexually transmitted infection, and where there was an ongoing state of emergency, do not display a state of mind "akin to criminal recklessness."

## V.    Qualified Immunity

Defendants conclude their motion for summary judgment by asserting they are entitled to qualified immunity.  (ECF No. 43, PageID.246-247.)  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *See Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))).  As explained by the Court in *Pearson v. Callahan*, a qualified immunity analysis involves two determinations: (1) "whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right," and (2) "whether the right at issue was "clearly established" at the time of defendant's alleged misconduct." 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  The Court may make these determinations in either order.  *Id.* at 236.

Defendants' argument for qualified immunity is largely redundant.  After initially arguing that they are entitled to judgment because they did not violate Hardrick's Eighth Amendment rights, they argue that they are entitled to qualified immunity because they did not violate Hardrick's Eighth Amendment rights.  In other words, Defendants do not contend that the rights at issue were not clearly

established at the time of their alleged misconduct.  In any event, the undersigned agrees; because it is the undersigned's opinion that there are no genuine issues of material fact and that Defendants did not violate Hardrick's Eighth Amendment rights, it is the undersigned's opinion that Defendants are entitled to qualified immunity.

## VI.    Failure to Serve

In addition to naming Forrest, Lounds, Jefferies, Kubont, and Huss as defendants when he filed suit in November of 2021, Hardrick named two unknown URF corrections officers as defendants.  (ECF No. 1, PageID.2.)  Because those unknown corrections officers have yet to be identified, they have yet to be served. Federal Rule of Civil Procedure 4(m) sets forth a 90-day deadline for service.  If a defendant is not served within that time period, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  *Id.*

This Court granted Hardrick leave to proceed *in forma pauperis* on February 23, 2022.  (ECF No. 7, PageID.46.)  Because this Court granted Hardrick leave to proceed *in forma pauperis*, this Court was obligated to issue Hardrick's summons to the U.S. Marshals for service "once reasonable steps [were] taken to identify for the court the defendants named in the complaint."  *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996); see also 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve

all process and perform all duties in such cases.").   But it does not appear that Hardrick has taken reasonable steps to identify the unknown corrections officers.  In fact, it does not appear that Hardrick has taken any steps to identify the unknown parties.  *See VanDiver v. Martin*, 304 F. Supp. 2d 934, 940 (E.D. Mich. 2004) ("[A] plaintiff may not remain silent and do nothing to effectuate service.  At minimum, a plaintiff should request service upon the appropriate defendant and attempt to remedy any apparent service defects of which a plaintiff has knowledge." (quoting *Rochon v. Dawson*, 828 F.2d 1107, 1109 (5th Cir. 1987))).

The 90-day period for service in this case began on March 8, 2022.  (ECF No. 11, PageID.56.)  The time for service therefore expired long ago.  Accordingly, the undersigned recommends that the Court dismiss Hardrick's claim against the unknown officers without prejudice in accordance with   Federal Rule of Civil Procedure 4(m).

## VII.  Recommendation

The undersigned respectfully recommends that the Court grant Defendants' motion for summary judgment.  (ECF No. 42.)  In the undersigned's opinion, Defendants have shown that there are no genuine issues of material fact and that they are entitled to judgment.  Hardrick's allegations that Defendants Forrest, Lounds, and Jeffries locked down and later fled his housing unit amidst a prison riot do not establish an Eighth Amendment violation.  And Hardrick's allegations that Defendants Huss and Kubont did not provide him with medical treatment following his alleged sexual assault, which did not cause him injury, and which occurred during

state of emergency due to the Covid-19 pandemic, do not establish that Huss or Kubont acted with deliberate indifference to his serious medical needs.

Additionally, the undersigned recommends that that the Court dismiss Hardrick's claim against the unknown corrections officers for failure to serve in accordance with Federal Rule of Civil Procedure 4(m).

If the Court accepts this recommendation, this case will be dismissed.


Dated:   November 6, 2023                    /s/ *Maarten Vermaat*
                                             MAARTEN VERMAAT
                                             U. S. MAGISTRATE JUDGE


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).